**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CAROL L. FULLER**                                                                                   **PLAINTIFF**

**v.**                                              **4:07CV01120-WRW**

**FIBER GLASS SYSTEMS, LP**                                                             **DEFENDANT**

**ORDER**

Pending are Defendant's Motion for Summary Judgment (Doc. No. 20) and Motion to Strike (Doc. No. 31). Plaintiff has responded,[1] and Defendant has replied.[2]

Plaintiff brings this civil rights action based on 42 U.S.C. § 1981 in order to recover damages against Defendant for alleged discriminatory employment practices that Plaintiff, Ms. Carol Fuller, has been subjected to on account of her race.[3] For the reasons set out below, Defendant's Motion for Summary Judgment is DENIED in PART and GRANTED in PART. Defendant's Motion to Strike is DENIED as MOOT.

**I.   BACKGROUND**

The facts of this case are paraphrased below based on the parties' Undisputed Statement of Material Facts:[4]

> On October 18, 2005, Defendant hired Plaintiff as a proof tester through Skillspan, a temporary employment agency. In July or August, 2006, Plaintiff applied for an administrative assistant position with Defendant. In September, 2006, Mr. Ron Winfrey, Defendant's Plant Manager, informed Plaintiff that Defendant was not going to fill the administrative assistant position for which she had applied.

---

[1]Doc. No. 22.

[2]Doc. No. 34.

[3]Doc. No. 13.

[4]See Doc. No. 20 (Exhibit 2); Doc. No. 23.

-1-

On or about September 1, 2006, Mr. Winfrey informed Plaintiff of another opportunity: a temporary order entry position in Defendant's sales department. Plaintiff began working in that position three days later. Ms. Yolonda Erasmus and Ms. Patty Holmes were both customer service representatives who acted as primary contacts for customers. Ms. Holmes was responsible for training Plaintiff for her new position, but Mr. Dale Smith was Plaintiff's direct supervisor in the sales department.

On or about October 25, 2006, Plaintiff quit the order entry job without speaking to her supervisor or notifying anyone. She was invited to return to her position as a proof tester immediately following her departure from the order entry position.

Soon after returning, Plaintiff submitted a formal written complaint to Mr. Winfrey alleging race discrimination and harassment during her experience in the temporary order entry position. Mr. Randy Stockman, Defendant's Division Human Resources Manager, received Plaintiff's complaint and investigated by interviewing Plaintiff, Ms. Holmes, Mr. Smith, Ms. Erasmus and eight other employees of Defendant. Mr. Stockman concluded that Plaintiff's allegations were unsupported. However, Defendant terminated Ms. Holmes's employment on January 4, 2007, based on, among other things, her inconsiderate treatment of Plaintiff.

On May 8, 2007, Plaintiff left her position with Defendant and filed this action on November 19, 2007.

## II.   STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[5] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[6]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the

---

[5] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

judgment beyond controversy.[7] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[8] I must view the facts in the light most favorable to the party opposing the motion.[9] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[10]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[11]

## III.   DISCUSSION

Defendant seeks summary judgment on Plaintiff's hostile work environment, disparate treatment, and retaliation claims. I will address each claim separately.

---

[7] *Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[8] *Id.* at 728.

[9] *Id.* at 727-28.

[10] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[11] *Anderson*, 477 U.S. at 248.

**A. Hostile Work Environment**

    **1. *Prima Facie* Case**

Defendant contends that it is entitled to summary judgment on Plaintiff's hostile work environment claim because she cannot make a *prima facie* case of harassment.[12] To establish a *prima facie* case of hostile work environment, Plaintiff must prove that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of her employment; and (5) Defendant knew or should have known of the harassment and failed to take proper remedial action.[13]

The fourth-prong involves both objective and subjective components. The harassment must be "severe or pervasive enough to create an objectively hostile or abusive work environment" and the victim must subjectively believe her working conditions have been altered.[14] An objectively hostile work environment is one that a reasonable person would find offensive.[15] The "totality of the circumstances" is looked at to determine whether there is a hostile work environment.[16] The factors that are examined include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employees work

---

[12]*Id.*

[13]*Tatum v. City of Berkeley*, 408 F.3d 543, 550 (8th Cir. 2005).

[14]*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).

[15]*Howard v. Burns Bros, Inc.*, 149 F.3d 835, 840 (8th Cir. 1998).

[16]*Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999).

performance.[17] Simple teasing, offhand comments, and isolated incidents will not amount to discriminatory changes in the terms and conditions of employment.[18] Long and pervasive mistreatment is more likely to be considered severe.[19]

With respect to the fifth-prong, a plaintiff can prove an employer's knowledge of harassment by showing she complained to higher management or by showing that the harassment was pervasive enough to charge the employer with constructive knowledge.[20]

In her hostile work environment claim, Plaintiff alleges the following:

(a) Plaintiff's supervisor Dale Smith on a consistent basis would berate her, yelling at her, accusing her of making mistakes, when he knew or should have known that Patty Holmes was the source of the mistakes.

(b) Dale Smith would constantly and consistently stand behind the plaintiff, while she attempted to do her work, in an apparent attempt to intimidate the plaintiff.

(c) Dale Smith refused to allow the plaintiff to be properly trained.

(d) On one occasion, while Patty Holmes was venting her frustration out on the plaintiff, which she consistently did, Dale Smith was standing behind the plaintiff. The plaintiff then noticed that Ms. Holmes was laughing; when the plaintiff turned, she saw Mr. Smith mimicking a gorilla or chimpanzee.

(e) The Plaintiff was not allowed to answer the telephone while at work. When the plaintiff inquired as to why she could not answer the telephone, Ms. Holmes told her that the customers of the defendant would not like hearing "a black voice on the phone."

(f) The plaintiff was not allowed to participate in office functions, such as luncheons, meetings, etc.

(g) While Mr. Smith and Ms. Holmes were away in Las Vegas, Nevada, plaintiff's co-worker Yolonda Erasmus, was left to answer the telephones. However, on one

---

[17]*Howard*, 149 F.3d at 893.

[18]*Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

[19]*Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003).

[20]*Faragher*, 524 U.S. at 792.

occasion, Ms. Erasmus was sick, and could barely speak. Ms. Erasmus requested the plaintiff to answer the telephone for her, and the plaintiff obliged her. When Mr. Smith returned, he yelled at the plaintiff telling her that under no circumstances, should be she be answering the telephone; Mr. Smith also yelled at Ms. Erasmus for allowing the plaintiff to answer the company's telephone.

(h) The plaintiff was closely monitored and scrutinized by Mr. Smith and also Ms. Holmes.

(i) The plaintiff was not given the codes to the facsimile machine, copier, or telephone.

(j) The plaintiff was mainly relegated to menial tasks such as filing, copying, and faxing.[21]

Defendant concedes that Plaintiff is a member of a protected class -- she is an African-American female.[22] It appears that the other five prongs are also met here. Defendant admits[23] that at least some of Plaintiff's allegations did, in fact, occur. Clearly some, if not all, of these acts were based on Plaintiff's race. Additionally, under the fourth-prong, Plaintiff subjectively believed her working conditions had been altered, i.e., she was not allowed to perform certain tasks because of hostile treatment. Defendant states that in Plaintiff's deposition she "admits that she did not report Patty Holmes' alleged 'black voice' or 'doesn't like black people' comments until after she left the order entry position."[24] Yet Plaintiff's deposition also contains statements that she complained to Mr. Dwight Marsenburg, who Plaintiff honestly believed was still her supervisor.[25] If this is true, Mr. Marsenburg at least had constructive knowledge of Plaintiff's

---

[21]Doc. No. 13.

[22]Doc. No. 20.

[23]*Id.*

[24]*Id.*

[25]See Doc. No. 23, n.1 ("The defendant will argue that Mr. Marsenburg was really not the plaintiff's supervisor. However, the plaintiff was put in the order entry position on a temporary assignment, according to the defendant. The plaintiff came out of her proof tester position, on the manufacturing side, where she was supervised by Mr. Marsenburg. The plaintiff was under the

alleged hostile work environment, which is enough to satisfy the fifth-prong. Plaintiff makes a *prima facie* case of hostile work environment.

### 2. *Ellerth-Faragher* Affirmative Defense

Defendant next argues that even if Plaintiff makes a *prima facie* case of hostile work environment, summary judgement is proper because of the *Ellerth-Faragher*[26] affirmative defense, which consists of two elements: (1) that the employer exercised reasonable care to prevent and promptly correct any harassing behavior (prevention/correction prongs); and (2) that the employee unreasonably failed to take advantage of the preventative or corrective opportunities provided by the employer or to avoid harm otherwise.[27]

It seems as if Defendant's actions satisfy the prevention and correction prongs. The policy at issue adequately "describes its anti-harassment policies and reporting procedures."[28] Plaintiff acknowledged that she received this policy when she began working in October, 2005, as well as the revised version in June, 2006.[29] Further, Mr. Stockman conducted an investigation "[i]mmediately upon receipt of Plaintiff's complaint from Ron Winfrey."

However, Defendant cannot show that Plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities . . . ."[30] As noted above, Plaintiff contends she complained to Mr. Marsenburg on more than one occasion before she quit in late October, 2006.

---

belief that since she was still getting her pay from the manufacturing side, Mr. Marsenburg was still her supervisor, for all intents and purposes. (Fuller's depo., p. 133)").

[26]*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. at 807-08.

[27]*Weger v. City of Ladue*, 500 F.3d 710, 718 (8th Cir. 2007).

[28]Doc. No. 20.

[29]*Id.*

[30]*Williams v. Missouri Dep't of Mental Health*, 407 F.3d 972, 976 (8th Cir. 2005).

Therefore, there is a genuine issue of material fact in dispute for a jury to decide, and Defendant's motion, as it relates to Plaintiff's hostile work environment claim, is DENIED.

### B. Race Discrimination

Defendant contends that summary judgment is appropriate on Plaintiff's race discrimination claim, too.[31] Because Plaintiff's claim is based on indirect evidence, her claim must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[32] Under the *McDonnell Douglas* analysis, the plaintiff must first establish a *prima facie* case of discrimination.[33] Once the plaintiff meets this initial threshold, a presumption arises that the employer "unlawfully discriminated against the employee."[34] The burden of production then shifts to the employer, who must articulate some legitimate, nondiscriminatory reason for the employment decision.[35]

The determination that a defendant has met its burden of production cannot be accomplished by assessing the credibility of the reason given by the defendant for its decision;[36] therefore, once the defendant articulates a "legitimate, nondiscriminatory reason for its decision," the presumption raised by the *prima facie* case of discrimination is rebutted and "drops from the case."[37] However, at all times in this analysis, the ultimate burden of production remains with the

---

[31]Doc. No. 20.

[32]411 U.S. 792 (1973).

[33]*Id.*

[34]*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

[35]*McDonnell Douglas*, 411 U.S. at 802.

[36]*Hicks,* 509 U.S. at 509.

[37]*Id.* at 507.

plaintiff.[38] Once the defendant has met its burden, the plaintiff must have "a fair opportunity to show that [the employer's] stated reasons for [the employment decision was] in fact pretext,"[39] or that the proffered reason for the employer's action was not true.[40]

In order to establish a *prima facie* case of discrimination, Plaintiff must prove (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that she was treated differently than similarly situated non-members of her class.[41]

It is undisputed that Plaintiff is a member of a protected class and that she was qualified for her position.[42] However, Defendant contends that summary judgment is proper because Plaintiff cannot establish that adverse employment action was taken against her or that others similarly situated were treated differently.[43]

An adverse employment action "must have a 'materially adverse impact' on the plaintiff's terms or conditions of employment"[44] and "not every setback amounts to an adverse employment action."[45] Plaintiff contends, among other things, that "she was discriminated

---

[38]*Id.*

[39]*McDonnell Douglas*, 411 U.S. at 804.

[40]*Hicks*, 509 U.S. at 508; *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).

[41]*LaCroix v. Sears, Roebuck & Co.*, 240 F.3d 688, 693 (8th Cir. 2001).

[42]Defendant concedes that Plaintiff has met her burden under the first two prongs of the *McDonnell Douglas* analysis. See Doc. No. 20.

[43]Doc. No. 20.

[44]*Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 868 (8th Cir. 2003) (quoting *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001)).

[45]*Powell v. Yellow Book U.S.A., Inc.*, 445 F.3d 1074 (8th Cir. 2006).

against on the basis of her race when she was denied the Administrative Assistant position."[46] Plaintiff claims this position opened up in July, 2006, she applied for it, interviewed, and then later was informed that Defendant decided not to fill the position because it was being phased out.[47] However, Plaintiff asserts that about a month later she "saw a white female working in an assistant capacity with Lenora, which is the position that Ms. Fuller was informed that she would be filling."[48] Taking these allegations to be true, it seems Plaintiff has made a *prima facie* case of discrimination.

In response, Defendant fails to state a legitimate, nondiscriminatory reason for denying Plaintiff the administrative assistant position and filling it with a white female. In fact, Defendant does not even address this issue in its Motion for Summary Judgment[49] and makes a futile argument in its Reply.[50] Defendant states "Plaintiff has no evidence to dispute the fact that the Company never filled the position for which Plaintiff originally applied."[51] Defendant provides no evidence to support its position. Therefore, there are genuine issues of material fact in dispute, and Defendant's Motion for Summary Judgment on Plaintiff's race discrimination claim is DENIED.

---

[46]Doc. No. 24.

[47]*Id.*

[48]*Id.*

[49]Doc. No. 20.

[50]Doc. No. 34.

[51]*Id.*

**C. Retaliation**

Defendant next seeks summary judgment on Plaintiff's retaliation claim.[52] To establish a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in protected activity; (2) reasonable employees would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct.[53] Once a plaintiff has established a *prima facie* case, the burden of production shifts to a defendant to advance a legitimate reason for the employment action. "If the employer does so, the presumption drops out and the trier of fact proceeds to decide the ultimate question," whether "the adverse employment action was motivated by intentional retaliation."[54]

The critical element in a retaliation claim is adverse employment action.[55] It is so critical that summary judgment is appropriate if a plaintiff fails to provide sufficient facts establishing an adverse employment action.[56] An adverse employment action is a "tangible change in duties or working conditions that constitute a *material employment disadvantage*."[57] For example -- a disciplinary warning is not an adverse employment action;[58] a poor performance rating is not an adverse action (unless a plaintiff shows a clear link to a detrimental result);[59] "an unfavorable

---

[52]Doc. No. 20.

[53]*Recio v. Creighton Univ.*, 521 F.3d 934, 939 (8th Cir. 2008).

[54]*Id.* (quoting *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007)).

[55]*Moisant v. Air Midwest, Inc.*, 291 F.3d 1028, 1031 (8th Cir. 2002).

[56]*Baucom v. Holiday Cos.*, 428 F.3d 764, 768 (8th Cir. 2005).

[57]*Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003) (emphasis added).

[58]*Baucom*, 428 F.3d at 768.

[59]*Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000).

evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment."[60]

Constructive discharge may qualify as a materially adverse employment action.[61] "A constructive discharge occurs when an employer deliberately renders an employee's working conditions intolerable with the intent of forcing the employee to leave the employment."[62] Constructive discharge is determined by an objective standard, not the employee's subjective feelings.[63]

Defendant contends that Plaintiff "was not constructively discharged and no other materially adverse action was taken with regard to her employment."[64] Plaintiff's grievance and 2007 EEOC charge are protected activities that satisfy the first-prong. With respect to the second-prong, Plaintiff argues that (1) she was subjected to intimidating staring by her co-workers; (2) that she was wrongly transferred to the rework division; and (3) that her supervisor, Mr. Marsenburg, even became the target of Defendant's retaliation against Plaintiff.[65] Defendant contends, and I agree, that none of these, even if true, amount to a material employment disadvantage under the objective standard. First, no reasonable employee "could have feared any

---

[60]*Id.*

[61]*Id.*

[62]*Knowles v. Citicorp Mortgage, Inc.*, 142 F.3d 1082, 1086 (8th Cir.1998).

[63]See *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1247 (8th Cir. 1998); *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995) ("An employee may not be unreasonably sensitive to [her] working environment.") (quoting *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981)).

[64]Doc. No. 20.

[65]Doc. No. 24.

materially adverse action from the staring . . . ."[66] Second, Plaintiff's transfer to the rework division was not retaliatory because it was only temporary and she received an 85 cents per hour pay increase.[67] And finally, "Plaintiff's allegation regarding 'targeting of her supervisor' is vague, nonsensical, and could not constitute a materially adverse action . . . ."[68] Defendant's alleged negative treatment of Mr. Marsenburg has no bearing on Plaintiff's retaliation claim. Notably, all of Defendant's alleged acts of retaliation occurred before Plaintiff filed her February, 2007, EEOC charge.[69]

Plaintiff was not constructively discharged either. "A reasonable person would not feel compelled to resign because they were given dirty looks or because their supervisor was being given a hard time." I agree. Plaintiff fails to make a *prima facie* case under the second-prong; therefore, I need not address the third-prong. Defendant's motion, as it relates to Plaintiff's retaliation claim, is GRANTED.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendant's Motion for Summary Judgment (Doc. No. 20) is DENIED in PART and GRANTED in PART. Plaintiff's retaliation claim is DISMISSED, but she may continue with her hostile work environment and race discrimination claims. Further, Defendant's Motion to Strike (Doc. No. 31) is DENIED as moot. The issues raised by Defendant in the motion do not change the outcome of the summary judgment motion. Trial will commence on Tuesday, April 14, 2009.

---

[66] Doc. No. 20.

[67] *Id.*

[68] *Id.*

[69] *Id.*

-14-

IT IS SO ORDERED this 20th day of March, 2009.

                                            /s/Wm. R. Wilson, Jr.
                                      UNITED STATES DISTRICT JUDGE