**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

CAROL L. FULLER                                                    PLAINTIFF

v.                                      4:07CV01120WRW

FIBER GLASS SYSTEMS, LP                                            DEFENDANT

<u>ORDER</u>

Pending are Defendant's Motion for Judgment as a Matter of Law or in the alternative a Motion for a New Trial (Doc. No. 120), Motion to Alter Judgment (Doc. No. 121), Motion to Stay Execution of Judgment (Doc. No. 122). Also pending is Plaintiff's Motion to Withdraw Punitive Damages Claim (Doc. No. 125). Responses were filed to each motion.[1]

For the reasons set out below: Defendant's Motion for Judgment as a Matter of Law or in the alternative a Motion for a New Trial is DENIED; Defendant's Motion to Alter Judgment is DENIED as MOOT; Defendant's Motion to Stay Execution of Judgment is DENIED as MOOT; and Plaintiff's Motion to Withdraw Punitive Damages Claim is GRANTED.

**I.      BACKGROUND**

Plaintiff, Ms. Carol Fuller, was employed by Defendant, Fiber Glass Systems, LP, from October 2005, until May 2007, when Plaintiff voluntarily quit.[2] On November 19, 2007, Plaintiff brought this action alleging claims of hostile work environment, disparate treatment, and retaliation.[3] The trial began on April 14, 2009, and concluded on April 21, 2009.[4]  At the conclusion

---

[1]Doc. Nos. 126, 128.

[2]Doc. No. 120.

[3]Doc. No. 1.

[4]Doc. Nos. 102, 106.

of Plaintiff's case, Defendant orally requested Judgment as a Matter of Law[5] on the following: discrimination and harassment claims; Defendant's *Ellerth-Fargher* affirmative defense; other issues of vicarious liability; front and back pay; compensatory damages; and punitive damages. At the close if its case, Defendant again sought Judgment as a Matter of Law, which I denied, although I reserved ruling on front and back pay and punitive damages.[6]

At 2:35 p.m. on April 21, 2009, the jury was instructed and began deliberations.[7] At 4:44 p.m., I turned the case over to United States Magistrate Judge Beth Deere while I was away briefly.[8] Before I returned, the jury returned its verdict at 5:14 p.m.[9] The jury found for Defendant on Plaintiff's race discrimination claim, but found for Plaintiff on her claim of race harassment by a supervisor and race harassment by a non-supervisor.[10] After Judge Deere received the verdict, I had a telephone conference with Judge Deere and both parties.[11] Judge Deere then instructed the jury on punitive damage, but the jury was ultimately deadlocked 10-2 as to punitive damages.[12] I gave the *Allen*[13] charge, but the jury could not come to a unanimous decision. A mistrial was declared on the issue of punitive damages.[14]

---

[5]Fed. R. Civ. P. 50(a).

[6]Doc. No. 106.

[7]*Id.*

[8]*Id.*

[9]*Id.*

[10]Doc. No. 111.

[11]Doc. No. 106.

[12]*Id.*

[13]*Allen v. U.S.*, 164 U.S. 492 (1896).

[14]Doc. No. 106.

Defendant now renews its Motion for Judgment as a Matter of Law, and in the alternative, a Motion for a New Trial[15] arguing that: (1) there was insufficient evidence to establish that Plaintiff suffered severe or pervasive harassment; (2) Defendant did all that was legally necessary to avoid liability for the harassment; and (3) Plaintiff did not take full advantage of opportunities to avoid harm, so Defendant did not know to take prompt, remedial action.[16] In the alternative, Defendant argues a new trial is warranted because: (1) the compensatory damages were excessive; (2) the jury considered impermissible factors while deliberating; (3) certain witnesses should not have been allowed to testify; (4) some jury instructions were improper; (5) the *Allen* charge was improper; and (6) Judge Deere should not have been allowed to handle the case while the jury was deliberating.[17]

## II.    DISCUSSION

### A. Judgment as a Matter of Law

A motion for judgment as a matter of law following a jury verdict -- a.k.a. motion for judgment notwithstanding the verdict ("JNOV") -- is governed by Federal Rule of Civil Procedure 50.  Judgment as a matter of law is appropriate when the evidence, viewed in the light most favorable to the verdict, was such that no reasonable juror could have returned a verdict for the nonmoving party.[18]  "Judgment as a matter of law is proper when the record contains no proof

---

[15]Doc. No. 120.

[16]*Id.*

[17]*Id.*

[18]*Minnesota Supply Co. v. Raymond Corp.*, 472 F.3d 524, 536 (8th Cir. 2006).

beyond speculation to support the verdict."[19]  The court does not weigh the evidence, determine the credibility of the witnesses, or substitute its conclusions for that of the jury.  A court should review all of the evidence in the record, including any evidence unfavorable to the non-moving party, that "the jury is required to believe."[20]

When considering a JNOV motion, a court may reconsider evidence that was erroneously admitted, strike the evidence, and then make the determination, based on the properly admitted evidence, as to whether there was sufficient evidence to support the verdict.[21] A trial judge who grants a JNOV should also rule conditionally on an alternative motion for new trial.[22]

### 1. Racial Harassment Claims

The Supreme Court has stated that a hostile work environment exists when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[23] To establish a *prima facie* case of hostile work environment, Plaintiff must prove that (1) she belongs to a protected group; (2) she was subjected to

---

[19]*Larson by Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir. 1996).

[20]9B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529 (3d ed. 2008) (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000)).

[21]*Weisgram v. Marley Co.*, 528 U.S. 440, 455-56 (2000) (Finding no abuse of discretion when the appellate court excluded expert testimony and instructed that judgment be entered as a matter of law, since, without the erroneously admitted testimony, there was insufficient evidence to support the jury verdict. The Supreme Court rejected Plaintiff's assertion "that allowing courts of appeals to direct the entry of judgment for defendants will punish plaintiffs who could have shored up their cases by other means had they known their expert testimony would be found inadmissible." The Court recognized that "although [Plaintiff] was on notice every step of the way that [Defendant] was challenging his experts, he made no attempt to add or substitute other evidence.").

[22]*Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 253-54 (1940).

[23]*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).

unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of her employment; and (5) Defendant knew or should have known of the harassment and failed to take proper remedial action.[24] To determine if the work environment was hostile, courts must look "at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[25]

### a. Frequency and Severity of Harassment

"By their nature, hostile work environment claims are not isolated incidents, but rather entail ongoing and repeated conduct."[26] "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."[27]

Defendant first argues that there were only three isolated incidents of harassment -- two by Plaintiff's co-worker, Ms. Patty Holmes, and one by Plaintiff's supervisor, Mr. Dale Smith.[28] Specifically, Defendant points to Plaintiff's testimony that: (1) on or about her first day at work, Ms. Holmes told her that "she had attended a predominantly all-black school in Memphis and that she didn't like blacks, but she said that if [Plaintiff] didn't cause her any stress or tension, that she would try to tolerate [Plaintiff]"; (2) Patty Holmes told her she could not speak with

---

[24]*Tatum v. City of Berkley*, 408 F.3d 543, 550 (8th Cir. 2005).

[25]*Al-Zubiday v. TEK Industries, Inc.*, 406 F.3d 1030, 1038 (citing *Harris*, 510 U.S. at 23).

[26]*Soto v. John Morrell & Co.*, 285 F.Supp.2d 1146, 1167 (N.D. Iowa 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)).

[27]*Morgan*, 536 U.S. at 115 (citing *Harris*, 510 U.S. at 21).

[28]Doc. No. 120.

customers on the phone "because the customers are used to hearing a certain voice over the phone and they're not used to hearing a black voice or ethnic voice over the phone"; and (3) on one occasion, Mr. Smith was "making gestures like a monkey or something, a gorilla."[29]

In addition to the three incidents discussed above, Plaintiff cites ten different instances of discrimination that occurred while Plaintiff worked for Defendant. Plaintiff states that she was: (1) not allowed to have access codes for the telephone, copier, and fax machine; (2) often referred to as "girl" by Dale Smith, while her co-workers were called by their names; (3) constantly yelled at by Dale Smith; (4) not allowed to attend office luncheons, or participate in parties; (5) not given proper training, in an effort to allow her to fail at her job; (6) constantly being told that she really did not want this job, because it was too hard; (7) questioned the day after she returned as to why she returned to work; (8) constantly being monitored when she went to the restroom on her breaks; (9) subjected to hostility whenever Plaintiff asked questions; and (10) routinely intimidated by Mr. Smith when he would stand behind her chair for about five minutes, without saying anything.[30]

Plaintiff provided "more than a few isolated incidents of harassment" which "is sufficient to establish a hostile work environment."[31] Further, as Plaintiff points out, "[j]ust because hostility is not accompanied with racially derogatory name calling, [that] does not necessarily mean that the hostility is not based on race."[32] These incidents all occurred in less than two

---

[29]*Id.*

[30]Doc. No. 127.

[31]*Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 574 (8th Cir. 1997) (citing *Hall v. Gus Constr. Co.*, 842 F.2d 1010 (8th Cir. 1988)).

[32]Doc. No. 127.

months, and the Eighth Circuit has found fewer incidents spread over a longer time frame to be actionable.[33] Thus, Plaintiff has met her burden.

With respect to severity, it seems to me that the harassing conduct complained of by Plaintiff was, in fact, severe enough for a jury to find a hostile work environment.[34] Based on the record, I cannot conclude that the jury's verdict was unreasonable.

### b. *Ellerth-Faragher* Defense

Defendant reasserts[35] the *Ellerth-Faragher* affirmative defense,[36] which allows an employer to escape liability for its employee's illegal actions if two elements are met: (1) the employer exercised reasonable care to prevent and promptly correct any harassing behavior (prevention/correction prongs); and (2) the employee unreasonably failed to take advantage of the preventative or corrective opportunities provided by the employer or to avoid harm otherwise.[37]

---

[33]See *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 909, 911-12 (8th Cir. 2006) (explaining that in that case, "there [were] eight alleged instances of [plaintiff's co-worker] using racially intensive terms toward [plaintiff] in a three-month time frame. We have found just a few incidents in a longer time span to be sufficient for a hostile work environment claim.") (citing *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 908-09 (8th Cir. 2003)).

[34]*Green*, 459 F.3d at 911 (quoting *White v. BFI Waste Servs. LLC*, 375 F.3d 288, 289 (4th Cir. 2004) ("To suggest that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the mere unflattering; it is degrading and humiliating in the extreme.")).

[35]Doc. No. 120.

[36]*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Kimberly B. Ellerth*, 524 U.S. 742 (1998).

[37]*Weger v. City of Ladue*, 500 F.3d 710, 718 (8th Cir. 2007).

### i. Employer Exercised Reasonable Care Element

"The first element of the affirmative defense imposes two requirements on employers, they must have (1) exercised reasonable care to prevent [racial] harassment (the 'prevention prong') and (2) promptly corrected any [racial] harassment that did occur (the 'correction prong')."[38] The prevention prong seeks to deter by giving credit "to employers who make reasonable efforts to discharge their duty."[39] "The correction prong requires the [employer] to demonstrate that it 'exercised reasonable care . . . to correct promptly any [racially] harassing behavior.'"[40]

As I explained when I denied Defendant's Motion for Summary Judgment on this issue,[41] Plaintiff admitted that she received Defendant's harassment and discrimination policy when she began working in October, 2005, as well as the revised edition in June, 2006.[42] Also, Mr. Randy Stockman conducted an investigation based on Plaintiff's complaint from Mr. Ron Winfrey.[43] Therefore, it appears that Defendant did "exercise reasonable care to prevent and promptly correct any harassing behavior,"[44] and has satisfied the first prong.

### ii. Plaintiff Unreasonably Failed to Avoid Harm Element

Although "proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any

---

[38] *Id.* at 719 (citations omitted).

[39] *Id.* (internal quotations and citations omitted).

[40] *Id.* (quoting *Faragher*, 524 U.S. at 807).

[41] Doc. No. 37.

[42] *Id.*

[43] *Id.*

[44] *Weger*, 500 F.3d at 718.

complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense."[45] There is also "no bright line rule as to when a failure to file a complaint becomes unreasonable."[46]

Defendant contends that Plaintiff unreasonably delayed filing a discrimination complaint.[47] Defendant claims that Plaintiff "did not report the alleged harassment for over two months,"[48] and that "for months Plaintiff delayed in reporting the alleged harassment by Patty Holmes to anyone."[49] However, Defendant fails to provide any testimony to support its argument. In fact, Plaintiff began working in Defendant's front office on September 4, 2006,[50] and Mr. Winfrey testified that Plaintiff met with him to discuss her complaint on a Thursday in October, 2006, which was only "weeks after she took the position."[51]

Further, Defendant fails to show[52] that Plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities . . . ."[53] Both parties agree that Plaintiff complained

---

[45]*Id.* at 724 (internal quotations omitted) (quoting *Faragher*, 524 U.S. at 807).

[46]*Id.* (quoting *Reed v. MBNA Mktg. Sys., Inc.*, 333 F.3d 27, 35 (1st Cir. 2003)).

[47]Doc. No. 120.

[48]Doc. No. 127.

[49]*Id.*

[50]Doc. No. 104.

[51]Doc. No. 103.

[52]Doc. No. 120.

[53]*Williams v. Missouri Dep't of Mental Health*, 407 F.3d 972, 976 (8th Cir. 2005).

to Mr. Marsenburg more than once before quitting in late October, 2006.[54] The jury determined

that Plaintiff did not act unreasonably.[55] I see no reason to overturn the jury's finding.

### 2. Compensatory Damages

Defendant next argues that Plaintiff did not suffer a "'genuine injury' that would justify

an award of any compensatory damages, no less $65,000.00 in damages."[56] Defendant contends

that Plaintiff offered only her own testimony regarding damages, and that even her own

testimony that she felt "bad" is insufficient.[57]

"An award of damages for emotional distress must be supported by competent evidence

of 'genuine injury.'"[58] A compensatory damage award for emotional distress damages "may be

based solely on plaintiff's own testimony."[59] Plaintiff argues, and I agree, that the circumstances

were such that the verdict was appropriate.[60] At trial, Plaintiff testified that she suffered

emotional distress from Defendant's discriminatory treatment:

| [PLAINTIFF'S ATTORNEY]: | I know we're kind of limited on time. I just want to ask you just a few more questions, Ms. Fuller. As a result of the treatment that you received in the front office, did you have to seek any type of medical treatment? |
|---|---|
| [PLAINTIFF]: | Once I come back, I went to my doctor because I was having problems dealing with it because I've never had to |

---

[54]Doc. Nos. 120, 127.

[55]Doc. No. 106.

[56]Doc. No. 120.

[57]*Id.*

[58]*Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir. 1999) (quoting *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)).

[59]*Forshee*, 178 F.3d at 531 (citing *Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 357-58 (8th Cir. 1997)).

[60]Doc. No. 127.

deal with that, and I couldn't sleep and I couldn't eat. I was sick at the stomach. I was stressed out. I felt that I had let the people in the factory down, the coworkers. I felt that I had let them down.

And so I went to my doctor.

* * *

[PLAINTIFF]:                    [My doctor] gave me some -- I think it was Wellbutrin, something like that.[61]

At trial, Mr. Winfrey testified that because Plaintiff was so upset about Defendant's discriminatory treatment, he gave her some time off of work.[62] Paired with the trial testimony of other witnesses, Plaintiff's testimony was sufficient to establish emotional damages. There is a "legally sufficient evidentiary basis for a reasonable jury to find for the non moving party,"[63] and the verdict must stand.

**B. Motion for a New Trial**

A court may grant a motion for a new trial on some or all the issues if, in the case of a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court."[64] "A new trial should be granted only if the evidence weighs heavily against the

---

[61]Doc. No. 104.

[62]Doc. No. 103.

[63]Fed. R. Civ. P. 50(a)(1).

[64]Fed. R. Civ. P. 59(a).

verdict."[65] The key inquiry is whether I should grant a new trial "to avoid a miscarriage of justice."[66]

### 1. Compensatory Damage Award and Remittitur

Defendant next contends that I should vacate the compensatory damage award,[67] and in the alternative, that I should reduce the award through remittitur.[68]

"A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e)."[69] "A new trial is appropriate where the verdict is against the clear weight of the evidence, clearly excessive, or the result of passion or prejudice."[70] "Rule 59(e) motions serve the limited function of correcting *manifest errors of law or fact* or to present newly discovered evidence."[71]

---

[65]*Maxfield v. Cintas Corp., No. 2*, 563 F.3d 691, 694 (8th Cir. 2009) (citing *U.S. v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

[66]*McKnight By and Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir. 1994) (citing *Beckman v. Mayo Found.*, 804 F.2d 435, 439 (8th Cir. 1986)).

[67]Fed. R. Civ. P. 59(e).

[68]Doc. No. 120.

[69]*Lowry ex rel. Crow v. Watson Chapel Sch. Dist*, 540 F.3d 752, 761 (8th Cir. 2009) (quoting *U.S. v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006)).

[70]*MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 930 (8th Cir. 2004) (citing *Ouachita Nat'l Bank v. Tosco Corp.*, 686 F.2d 1291, 1294 (8th Cir. 1982)).

[71]*Lowry*, 540 F.3d at 761 (quoting *Metro. St. Louis Sewer Dist.*, 440 F.3d at 993) (emphasis added).

Defendant argues that there was no evidence of any medical treatment or injury of any kind.[72] However, Plaintiff was awarded $65,000 at trial for emotional damages, and a $65,000 judgment is in-line with damages stemming from employment discrimination.[73]

Remittitur is appropriate when the court "believes the jury's award is *unreasonable* on the facts"[74] or "when the verdict is so grossly excessive as to shock the court's conscience."[75]

Defendant offers no evidence[76] that the verdict is "so grossly excessive the result is monstrous or shocking."[77] Thus, I agree with Plaintiff that the verdict should stand.

### 2. Factors Jury Considered When Deliberating Punitive Damages

Defendant also contends that the jury considered and possibly included punitive damages in its compensatory damage verdict.[78] Defendant bases its argument on the presiding juror's statement: "I think we took [punitive damages] into consideration when we put those amounts

---

[72]Doc. No. 120.

[73]See *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1067 (8th Cir. 1997) ("After carefully reviewing the evidence, we conclude that, although an award of $1.75 million for emotional distress is grossly excessive, an award of $100,000 is not.); *Kimzey*, 107 F.3d at 570 ($35,000); *Turic v. Holland Hospitality, Inc.*, 86 F.3d 1211, 1215-16 (6th Cir. 1996) (listing cases in which damages for emotional distress ranged from $40,000 to $150,000); *Kientzy v. McDonnell Douglas Corp.*, 990 F.2d 1051, 1054 (8th Cir. 1993) ($150,000); *Rush v. Scott Specialty Gases, Inc.*, 930 F. Supp. 194, 199 (E.D. Pa. 1996) ($100,000).

[74]*Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1049 (8th Cir. 2002) (quoting *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331-32 (11th Cir. 1999)).

[75]*Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 869 (8th Cir. 2006) (quoting *Am. Bus. Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1146 (8th Cir. 1986)).

[76]Doc. No. 120.

[77]*Hite*, 446 F.3d at 869 (quoting *Callantine v. Staff Builders, Inc.*, 271 F.3d 1124, 1133 (8th Cir. 2001)).

[78]Doc. No. 120.

on the [compensatory damages] form that we just turned in to you."[79] At that juncture, the jury had not been read the punitive damages instruction because the trial was bifurcated.[80] I agree with Plaintiff that the jury could not have considered punitive damages because it had not been instructed on this matter.[81] Even when given the opportunity, the jury could not agree on whether to give Plaintiff punitive damages.[82]

In addition, Defendant raised this issue in its Renewed Motion for Judgment as a Matter of Law.[83] In denying that motion, I noted "that defense counsel cites no authority for its argument that Juror No. 11's statement 'demonstrates that no reasonable jury could conclude punitive damages should be assessed against FGS.'"[84] It appears nothing has changed.

### 3.  Testimony of Dwight Marsenburg and Floyd Beavers

Defendant contends that "[t]he Court's failure to exclude the testimony of Dwight Marsenburg and Floyd Beavers . . . are examples of harmful errors which affected 'a substantial right' of Defendant and that would likely change the trial result."[85] Plaintiff's response is that these issues already have been briefed by the parties.[86] I stand by my previous rulings. It seems

---

[79]Doc. No. 106.

[80]*Id.*

[81]Doc. No. 127.

[82]*Schlier v. Rice*, No. 3:04-CV-1863, 2009 WL 1323564, at *4 (M.D. Pa. May 7, 2009) (upholding the jury's verdict despite argument that the jury improperly included punitive damages in its compensatory damages verdict because the jury had not received punitive damages instruction yet, had not considered evidence on punitive damages and did not award punitive damages when given the opportunity).

[83]Doc. No. 101.

[84]Doc. No. 117 (quoting Doc. No. 101).

[85]Doc. No. 120.

[86]Doc. No. 127.

to me that the testimony of Mr. Marsenburg and Mr. Beavers is relevant and allowing such

testimony did not constitute error.

### 4.  Closing Instructions and Verdict Form No. 2

Defendant next contends that Closing Instruction Nos. 4, 7, 8, 9, and 10, as well as

Verdict Form No. 2, were improper. Plaintiff argues, and I agree, that "[t]hese matters were

previously objected to, argued, and ruled on by the court." Again, I stand by my previous

rulings; therefore, a new trial with respect to these instructions and verdict form is not warranted.

### 5. *Allen* Charge

Defendant argues that the *Allen* charge was inappropriate and put Defendant at a

disadvantage because the *Allen* charge reaffirmed to the jury that they could ultimately remain

deadlocked.[87]

In *United States v. Aldridge*,[88] the Eighth Circuit held that "the issuance of an *Allen*

charge is neither inherently coercive nor prejudicial."[89] Rather, "[i]n order to determine if the

charge was improper due to coercive effect, the court must evaluate the context in which [the

*Allen* charge] was given."[90] There are four factors to consider when determining "whether an

*Allen* charge was impermissibly coercive: (1) the content of the instruction; (2) the length of

deliberation after the *Allen* charge was issued; (3) the total length of the deliberation; and (4) any

indicia that the jury was coerced or pressured."[91]

---

[87]Doc. No. 120.

[88]413 F.3d 829 (8th Cir. 2005).

[89]*Id.* at 832 (citing *United States v. Cortez*, 935 F.2d 135, 141 (8th Cir. 1991)).

[90]*Aldridge*, 413 F.3d at 832 (citing *United States v. Felix*, 996 F.2d 203, 208 (8th Cir. 1993); *United States v. Robinson*, 953 F.2d 433, 436 (8th Cir. 1992)).

[91]*Id.* at 832 (citing *United States v. Warfield*, 97 F.2d 1014, 1022 (8th Cir. 1996)).

In *Aldridge*, the Eighth Circuit held that the *Allen* charge was non-coercive in content because it mirrored the model instruction in the Eighth Circuit Manual of Model Criminal Jury Instructions.[92] The *Allen* charge that I gave[93] was nearly identical to the standard instruction from the Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit.[94]

Additionally, in *Aldridge*, the jury deliberated for roughly twenty minutes after hearing the *Allen* charge.[95] The Eighth Circuit held that was permissible because "there is no record of how the jury was split at the time of deadlock, it is impossible to speculate as to what switching or convincing took place after the district court issued the *Allen* charge."[96] Here, the jury deliberated for roughly twenty minutes after I read the *Allen* charge.[97] Even though the parties and I knew the jury was split 10-2,[98] we did not know which way the jury was split or how strong the jurors' convictions were.[99]

The trial in *Aldridge* lasted two days, and the jury deliberated for a total of two hours and forty-two minutes.[100] The Eighth Circuit determined that the total deliberation time was not "so disproportionate as to raise an inference that the *Allen* charge coerced the jury."[101] The trial in the

---

[92]*Id.* at 832-33 (citing *United States v. Thomas*, 946 F.2d 73, 76 (8th Cir. 1991).

[93]Doc. No. 106.

[94]Eighth Circuit Model Civil Jury Instruction Number 3.07.

[95]*Aldridge*, 413 F.3d at 833.

[96]*Id.*

[97]Doc. No. 106.

[98]I received a note from the jurors which stated they were deadlocked 10-2.

[99]Doc. No. 106.

[100]*Aldridge*, 413 F.3d at 833.

[101]*Id.* (internal quotation omitted).

present case lasted five days,[102] and the jury deliberated for over two and one-half hours on compensatory damages[103] and for over an hour on punitive damages.[104]

There are no other factors that would influence or coerce the jury.[105] Defendant only claims that the *Allen* charge was inappropriate based on how long the jury deliberated after the *Allen* charge was read, and does not claim any other basis for coercion.[106] Accordingly, the *Allen* charge was appropriate.

### 6. Magistrate Judge's Authority

Defendant finally contends that Judge Deere did not have authority to preside over the trial in my absence.[107] The parties were advised at 4:44 p.m. that Judge Deere would sit for me for a short period of time while I was out. She began to preside at 5:14 p.m. Defendant interposed no objection. It seems to me that an objection should have been made at that time -- not well after the trial was over (in post-trial motions).

Even if Defendant did not waive its objection, Judge Deere's participation was permissible. The Federal Magistrate Judges Act[108] provides two situations when a magistrate judge may preside over civil litigation matters: (1) when both parties consent,[109] or (2) when the district court judge assigns certain "additional duties" to the magistrate judge, so long as the

---

[102]Doc. Nos. 102-06.

[103]Doc. No. 106.

[104]*Id.*

[105]*Aldridge*, 413 F.3d at 833.

[106]Doc. No. 106.

[107]Doc. No. 120.

[108]28 U.S.C. § 631-639.

[109]28 U.S.C. § 636(c)(1).

"additional duties" are not inconsistent with the Constitution and laws of the United States.[110]

For a magistrate to have jurisdiction when both parties consent, there must be a "clear and

unambiguous statement in the record of the affected parties' consent to the magistrate judge's

jurisdiction."[111] The parties did not explicitly consent to Judge Deere presiding over the trial in

my absence,[112] and, therefore, there was no express consent. However, Judge Deere did have

authority to proceed in my absence because I assigned her the tasks of accepting the verdict and

reading the pre-determined punitive damage instruction, if I had not returned. Both tasks are

"additional duties" that may be assigned to a magistrate judge.[113]

    In *United States v. Demarrias*,[114] the Eighth Circuit upheld the magistrate judge's

presiding over a deliberating jury and accepting the jury's verdict because the magistrate judge

was merely acting as an "intermediary" between the jury and the judge.[115] Although not

physically present, the district court judge "maintained full control of the proceedings by

telephone."[116] The court reasoned that "[i]f a non-Article III judge may constitutionally make

---

[110]28 U.S.C. § 636(b)(3).

[111]*Harris v. Folk. Const. Co.*, 138 F.3d 356, 369 (8th Cir. 1998) (citations omitted).

[112]Doc. Nos. 120, 127.

[113]*Harris*, 138 F.3d at 370 (holding that "[t]he ministerial tasks of supervising a jury and receiving its verdict on behalf of an Article III judge are among those additional duties delegable under § 636(b)(3)") (citations omitted).

[114]876 F.2d 674 (8th Cir. 1989).

[115]*Id.* at 677 (explaining that the magistrate judge's tasks only included "taking the jury's question, contacting the district judge, and then conveying the answer to the jury").

[116]*Id.*

preliminary findings of fact and credibility in pretrial motions . . . then it seems clear that a magistrate may simply relay a district judge's instructions to the jury or to the parties."[117]

Here, Judge Deere simply oversaw the deliberating jury while I was away briefly. Judge Deere accepted the jury's verdict, accompanied both parties to chambers, participated in a conference call with me to discuss the punitive damages instruction, and then gave the punitive damages instruction. Judge Deere specifically avoided making any findings of fact or conclusions of law.[118] In fact, when Defendant renewed its Rule 50 motions, Judge Deere declined to rule on the motion:

[MAGISTRATE JUDGE]:    I'll let the record show that you have renewed your motion. And as you know, I'm not in a position to rule on it, but Judge Wilson will rule on that when he returns.[119]

Judge Deere merely acted as an intermediary in my short absence; therefore, her actions were permissible.

### C.  Motion to Alter or Amend Judgment, Motion to Stay Execution of Judgment, Motion to Withdraw Punitive Damages Claim

On June 4, 2009, Defendant filed the Motion to Alter Judgment.[120] Defendant contends that the Judgment be amended to: (1) exclude all extraneous information; (2) enter judgment in favor of Defendant on Plaintiff's race discrimination claim (Verdict Form No. 1); and (3) eliminate any statement regarding post-judgment interest.[121]

---

[117]*Id.* (internal citations omitted).

[118]Doc. No. 106.

[119]*Id.*

[120]Doc. No. 121.

[121]*Id.*

Defendant also filed the Motion to Stay Execution of Judgment.[122] Defendant argues that: (1) based on Rule 62(b) of the Federal Rules of Civil Procedure, "the Court may stay the execution of a judgment pending disposition of the opposing party's Rule 50 and Rule 59 motions"; (2) "the Court may stay execution on a partial judgment until the entry of a later judgment disposing of additional claims"; and (3) in the alternative, "because the Judgment is not a final judgment or a final partial judgment, Plaintiff should not be allowed to execute on the Judgment at this time."[123]

It appears that both motions are now moot because Plaintiff filed her Motion to Withdraw Punitive Damages Claim on June 18, 2009.[124] Defendant does not oppose Plaintiff's Motion to Withdraw Punitive Damages Claim. Because punitive damages is no longer an issue in this case, a new final Judgment will be entered. I need not address the merits of Defendant's two motions discussed above, although the new, final Judgment will reflect some of the arguments posed by Defendant.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendant's Motion for Judgment as a Matter of Law or in the alternative a Motion for New Trial (Doc. No. 120) is DENIED, Defendant's Motion to Alter Judgment (Doc. No. 121) is DENIED as MOOT, and Defendant's Motion to Stay Execution of Judgment (Doc. No. 122) is DENIED as MOOT. Further, Plaintiff's Motion to Withdraw Punitive Damages Claim (Doc. No. 125) is GRANTED.

---

[122]Doc. No. 122.

[123]*Id.*

[124]Doc. No. 125.

Plaintiff's punitive damages claim is DISMISSED. A new, final Judgment will accompany entry of this Order. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED this 24th day of June, 2009.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE